UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:24-CV-00082-GNS

CHRISTOPHER DAVIS                                                                                         PLAINTIFF

v.

OFFICER BRADEN RILEY et al.                                                                      DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' Motion to Dismiss (DN 10). The motion is ripe for adjudication.

**I.      BACKGROUND**

In August 2023, Defendant Braden Riley ("Riley"), a police officer employed by the Central City Police Department ("CCPD") initiated a traffic stop of Plaintiff Christopher Davis ("Davis"). (Compl. ¶¶ 10-11, DN 1). Davis alleges that he was pulled over for the offense of reckless driving, which he denies committing. (Compl. ¶¶ 11-12). After Riley handed the citation to Davis, Davis crumpled up the citation and threw it on the floor of his truck. (Compl. ¶¶ 15). Riley alleged asked Davis whether he intended to appear for his court date, and the response was noncommittal. (Compl. ¶ 16). Davis contends that Riley then unlawfully extended the stop, required Davis to exit the vehicle, restrained him in handcuffs without any legal basis, and cited Davis for resisting arrest. (Compl. ¶¶ 17-19, 21-23). Davis alleges that the placement of the handcuffs resulted in stress to his back, arms, legs, and knees, and he told Riley that he was in poor health. (Compl. ¶¶ 25-26). Davis claims that Riley's actions "exacerbat[ed] old injuries and create[ed] new injuries." (Compl. ¶ 26).

1

Davis filed this civil rights action against Riley, Police Chief Jason Lindsey ("Lindsey"), the CCPD, and the City of Central City ("City") (collectively, "Defendants"). (Compl. ¶¶ 6-9). The individuals are sued in both their individual and official capacities. (Compl. ¶¶ 6-7). Davis assets claims under 42 U.S.C. § 1983 for violations of his Fourth Amendment rights, and state law claims for assault, battery, false imprisonment, official misconduct, and malicious prosecution. (Compl. ¶¶ 29-81).

Defendants moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 4(m), 12(b)(6), and 41(b).

## II. DISCUSSION

### A. Fed. R. Civ. P. 4(m)

In relevant part, Fed. R. Civ. P. 4 provides:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. This subdivision (m) does not apply to service in a foreign country under Rule 4(f), 4(h)(2), or 4(j)(1), or to service of a notice under Rule 71.1(d)(3)(A).

Fed. R. Civ. P. 4(m). After the filing of this motion, the Court granted Davis an additional ninety days to serve Defendants. (Order 1, DN 12). Accordingly, Defendants' motion is denied on this basis.

### B. Fed. R. Civ. P. 41(b)

In relevant part, Fed. R. Civ. P. 41 provides:

> If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits.

Fed. R. Civ. P. 41(b). In determining whether to dismiss a matter on this basis, a court must consider:

> (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the [] party's conduct; (3) whether the [] party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal of the action.

*Carpenter v. City of Flint*, 723 F.3d 700, 704 (6th Cir. 2013) (quoting *Mulbah v. Detroit Bd. of Educ.*, 261 F.3d 586, 589 (6th Cir. 2001)).

The first factor considers whether there is "a clear record of delay or contumacious conduct . . . ." *Id.* (quoting *Feeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir. 1997)). Defendants point to Davis's belated filing (by four days) of a status report as a directed by the Court. (Defs.' Mot. Dismiss 5; Order, DN 4). While the Court does not condone non-compliance, Davis's untimeliness does not establish a clear record of delay or contumacious conduct warranting dismissal for lack of prosecution.

The second factor involves considering whether Defendants have been prejudiced by Davis's conduct. *See Carpenter*, 723 F.3d at 704 (citation omitted). Defendants assert that they have been prejudiced by Davis's delay, but this argument is not well-taken. This case is still in its infancy, and dismissal is simply not warranted.

The third factor is whether Davis has been warned of the consequences of his failure to cooperate. *See Carpenter*, 723 F.3d at 704 (citation omitted). This factor was not addressed by Defendants and does not support dismissal in the absence of any prior warning to Davis.

The final factor is whether the Court considered or imposed less dramatic remedies before dismissal for lack of prosecution. *See Carpenter*, 723 F.3d at 704 (citation omitted). Besides the belated status report and the requested extension for service, Davis has been actively

engaged in this case, in this case, dismissal pursuant to Fed. R. Civ. P. 41(b) is not an appropriate remedy in place of a trial on the merits.

When these factors are considered, they do not weigh in favor of dismissal pursuant to Fed. R. Civ. P. 41(b), and Defendants' motion is therefore denied. *See JJ Rods LLC v. Horchen*, No. 2:23-CV-3052, 2024 WL 2883287, at *3 (S.D. Ohio June 7, 2024) ("[T]he Court considers the Federal Rules of Civil Procedure's strong preference for decisions made on the merits as a matter of public policy." (citing *Russell v. City of Farmington Hills*, 34 F. App'x 196, 198 (6th Cir. 2002))).

### C. Fed. R. Civ. P. 12(b)(6)

Finally, Defendants seek dismissal of Counts I, II, III, and VII pursuant to Fed. R. Civ. P. 12(b)(6). (Defs.' Mot. Dismiss 4-6). To survive dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (citation omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When considering a motion to dismiss, a court must "accept all the [Plaintiff's] factual allegations as true and construe the complaint in the light most favorable to the Plaintiff[]." *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 716 (6th Cir. 2005) (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (alteration in original) (internal quotation marks omitted) (citation omitted).

4

1. **Count I**

In Count I, Davis purports to assert an excessive force claim against all Defendants. In their motion, Defendants seek dismissal of this claim against Lindsey in both his individual and official capacities, CCPD, and the City. (Defs.' Mot. Dismiss 6-7).

The allegations in the Complaint do not specify how Lindsey, CCPD, or the City of Central City could be liable under Section 1983. Davis has not alleged that Lindsey was present or participated in the traffic stop giving rise to this claim.

Similarly, Davis has not asserted a claim for supervisory liability in Count I. As the Sixth Circuit has explained:

> "A supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the [supervisor] at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 470 (6th Cir. 2006) (internal quotation marks omitted) (internal citations omitted) (citation omitted). Based on the allegations in the Complaint, Davis has failed to state a supervisor liability claim in Count I because he has not alleged any encouragement or direct participation by Lindsey in Riley's alleged unconstitutional conduct.

Likewise, the allegations as this claim do not purport to assert a *Monell* claim against the CCPD or the City in accordance with *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690-91 (1978). Therefore, Count I has not stated a claim against the CCPD or the City.

Accordingly, the motion is granted on this basis.

### 2. Counts II and III

Defendants also seeks dismissal of the claims in Counts II and III, which seek to impose liability on Lindsey, the CCPD, the City. (Defs.' Mot. Dismiss 7-11).

#### a. Official Capacity Claims

As a preliminary matter, Defendants seek dismissal of the official capacity claims asserted against Riley and Lindsey as duplicative of claims against the City. (Def.'s Mot. Dismiss 7). This argument is well-taken.

"[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent . . . ." *Monell*, 436 U.S. at 691 n.55. In this instance, the official capacity claims against Riley and Lindsey are really against the City, which is also a party to this action. Thus, these official capacity claims are duplicative, and the motion will be granted on this basis. *See Owens v. Trulock*, No. 1:18-CV-00167-GNS-HBB, 2020 WL 376658, at *2 (W.D. Ky. Jan. 23, 2020) (citations omitted); *Thorpe ex rel. D.T. v. Breathitt Cnty. Bd. of Educ.*, 932 F. Supp. 2d 799, 802 (E.D. Ky. 2013) (citing *Doe v. Claiborne Cnty. By & Through Claiborne Cnty. Bd. of Educ.*, 103 F.3d 495, 509 (6th Cir. 1996)).

#### b. Claims against the CCPD

Defendants also seek dismissal of the claims asserted against the CCPD. (Defs.' Mot. Dismiss 10-11). The Sixth Circuit has held that law enforcement agencies may not be sued for damages. *See Mayers v. Williams*, No. 16-5409, 2017 WL 4857567, at *3 (6th Cir. Apr. 21, 2017) ("The district court also properly dismissed Mayers's § 1983 claims against the Millersville Police Department and the 20th Judicial District Drug Task Force. Because neither the police department nor the task force may be sued, the proper defendants are the City of Millersville and the jurisdictions that have joined together to form the 20th Judicial District Drug

Task Force." (citing *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994))); *Matthews*, 35 F.3d at 1049 ("Since the Police Department is not an entity which may be sued, Jefferson County is the proper party to address the allegations of Matthews's complaint." (citing *Smallwood v. Jefferson Cnty. Gov't*, 743 F. Supp. 502, 503 (W.D. Ky. 1990))). Accordingly, Counts II and III are dismissed against the CCPD as being duplicative of the claims against the City.

      **c.**  **Claims Against the City**

Finally, Defendants seek dismissal of Counts II and III as to the City. (Defs.' Mot. Dismiss 8-9). They contend that Davis has failed to state a *Monell* claim against it. (Defs.' Mot. Dismiss 8-9).

For a municipality to be liable for the actions of its employees under *Monell*, a causal link must connect the alleged constitutional deprivation to a policy or custom of the municipality. *See Deaton v. Montgomery Cnty.*, 989 F.2d 885, 889 (6th Cir. 1993). "*Monell* is a case about responsibility." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986). "The official policy requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Id.* at 479-80 (internal quotation marks omitted).

To establish municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). A plaintiff may show the existence of an illegal policy or custom by showing: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the

7

existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citation omitted).

As alleged, these claims against the City appear to be nothing more than boilerplate or threadbare recitals. Davis seeks to impose liability in various ways: (i) negligent hiring, retention, monitoring, supervision, and failing to take remedial actions; (ii) inadequate training, supervision, and discipline; (iii) failing to investigate past incidents of misconduct, and failing to enforce policies and procedures; and (iv) failing to have policies and procedures to address officer misconduct. (Compl. ¶¶ 40-43, 52-56). Davis contends that the wrongful practices, policies, customs, or "usages" reflect a deliberate indifference, and were both the direct and proximate cause of his injury. (Compl. ¶¶ 45, 58). Notwithstanding those assertions, the Complaint otherwise lacks factual allegations to support those conclusory statements. For this reason, the motion is granted as to Counts II and III.

### 3. Count VII

In Count VII, Davis seeks to assert a claim for official misconduct in violation of KRS 522.020. (Compl. ¶¶ 74-77). This penal statute provides:

> A public servant is guilty of official misconduct in the first degree when, with intent to obtain or confer a benefit or to injure another person or to deprive another person of a benefit, he knowingly:
> (a) Commits an act relating to his office which constitutes an unauthorized exercise of his official functions; or
> (b) Refrains from performing a duty imposed upon him by law or clearly inherent in the nature of his office; or
> (c) Violates any statute or lawfully adopted rule or regulation relating to his office.

KRS 522.020(1). While Davis seeks to assert this violation under KRS 446.070, Davis does not cite any cases holding that civil damages are recoverable for a violation of KRS 522.020, and this Court has previously dismissed such claims. *See Snider v. City of Lyndon*, No. 3:23-CV-

486-RGJ, 2024 WL 3165322, at *8 (W.D. Ky. June 25, 2024) (citing *Madden v. Calvert*, No. 1:16-CV-P147-GNS, 2017 WL 4366746, at *2 (W.D. Ky. Sept. 29, 2017); *Keeling v. Hartman*, No. 5:21-CV-57-TBR, 2022 WL 855289, at *4 (W.D. Ky. Mar. 22, 2022)). Accordingly, this claim is dismissed.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (DN 10) is **GRANTED IN PART** and **DENIED IN PART**.

Greg N. Stivers, Chief Judge
United States District Court

April 4, 2025

cc: counsel of record